UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROGER DANIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-87 (RCL) |
| | ) | |
| THE JOHNS HOPKINS UNIVERSITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In this case, plaintiff Roger Daniel ("Daniel") brings several claims against defendant The Johns Hopkins University ("JHU"), including racial discrimination in violation of 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the D.C. Human Rights Act ("DCHRA") (Counts I, II, and III), assault and battery (Count IV), retaliation under Section 1981, Title VII, and the DCHRA (Count V), hostile work environment under Section 1981, Title VII, and the DCHRA (Count VI), and wrongful termination under Section 1981, Title VII, and the DCHRA (Count VII). Daniel also brings claims of racial discrimination in violation of Section 1981, Title VII and the DCHRA against defendants George Petasis ("Petasis") and Shanna Hines ("Hines").

Before the Court are the defendants' Motion for Summary Judgment, ECF No. 12, the plaintiff's Opposition, ECF No. 14, and the defendants' Reply, ECF No. 16. For the reasons set forth below, the Court will GRANT the defendants' motion.

1

## I. BACKGROUND

In or about November 2012, Daniel, who is African-American, applied to JHU's School of Advanced International Studies ("SAIS") for the position of Multimedia Production Coordinator. Daniel Dep. in *Richardson v. JHU, et. al.* at 70:2-7, July 31, 2014, ECF No. 12-8; Hines Decl. ¶ 10, ECF No. 12-4. Daniel was hired for the position, and his job duties included, "among other things, providing video and audio services for classes and special events, providing post-production services for recordings, and supporting SAIS's video teleconferencing and web conferencing needs," as well as providing "support to the IT help desk when needed and to perform other duties as assigned." Hines Decl. ¶ 11. Daniel began working at JHU on December 11, 2012. Letter from Shanna Hines to Roger Daniel (Dec. 3, 2012), ECF No. 12-11. When JHU employees begin their employment, they first enter a probationary period, during which the supervisor assesses the employee's suitability for the position. Hines Decl. ¶ 5. Defendant Hines was the Human Resources Manager when Daniel was employed at JHU's SAIS, and defendant Petasis was the Chief Information Officer. Hines Decl. ¶¶ 2-3. When Daniel first started at SAIS, Sharon Richardson ("Richardson") was Daniel's immediate supervisor. Daniel Dep. at 83:18-20, July 31, 2014. Mohammad Elahi ("Elahi") became Daniel's immediate supervisor after Richardson left. Daniel Dep. at 226:16-18, July 31, 2014.

Shortly after he started his employment at SAIS, several meetings were held to address Daniel's complaints about work, including meetings with Petasis and Elahi regarding Daniel's Saturday work schedule, lack of parking space and lack of place to store his personal belongings. Email from Roger Daniel to George Petasis (Jan. 24, 2013, 8:35 PM), ECF No. 12-12. On Thursday, January 31, 2013, a Carey Business School employee sent Daniel a request for assistance with a lecture on Saturday, February 2, 2013. Email from Socorro Diaz-Perry to Roger

Daniel (Jan. 31, 2013, 2:27 PM), ECF No. 12-4. Daniel responded, stating that he was unfamiliar with the software, and forwarded the email to his supervisor. Email from Roger Daniel to Socorro Diaz-Perry (Jan. 31, 2013, 4:00 PM), ECF No. 12-4. The same day, Elahi contacted Petasis and wrote that Daniel's "handing over everything to [Elahi] is not helpful," emphasizing that they "need a solution for this position in the next couple of weeks." Email from Mohammad Elahi to George Petasis (Jan. 31, 2013, 4:25 PM), ECF No. 12-4. Daniel was terminated on February 4, 2013, 55 days after starting his employment at SAIS and well within his probationary period. Letter from Shanna Hines to Roger Daniel (Feb. 4, 2013), ECF No. 12-13; Hines Decl. ¶ 17.

## II. LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

In making a summary judgment determination, the court must believe the evidence of the non-moving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "the mere existence of a scintilla of evidence in support of the non-moving party" is insufficient to create a genuine dispute of material fact. *Id.* at 252. Instead, evidence must exist on

which the jury could reasonably find for the non-moving party. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### III. ANALYSIS

#### A. Counts I, II and III (Racial Discrimination)

"Direct evidence of discrimination is evidence that, if believed by the fact finder, proves the particular fact in question *without any need for inference*. . . . [Such evidence] includes any statement or written document showing a discriminatory motive *on its face.*" *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 86 (D.D.C. 2006) (internal citation and quotation marks omitted). "[D]irect evidence does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decision makers unrelated to the decisional process itself." *Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641, 665 (D.D.C. 1997); *see also Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011) (holding that "[t]he record contains no direct evidence of discrimination – for example, a statement that itself shows racial or gender bias *in the decision* – that would generally entitle a plaintiff to a jury trial) (emphasis added); *Robinson v. Red Coats, Inc.*, 31 F. Supp. 3d 201, 216 (D.D.C. 2014) (holding that plaintiff presented direct evidence of discriminatory intent where manager told plaintiff that "maybe [she is] too old to work" on the night she was fired).

Defendants claim that plaintiff failed to demonstrate any direct evidence of discrimination. Defs.' Mot. Summ. J. at 16. Plaintiff responds by alleging that defendant Petasis called him "boy" and "hit [him] at least a dozen times." Pl.'s Opp'n at 5-6; Daniel Aff. ¶¶ 5-7, 22, Feb. 17, 2014,

4

ECF No. 14-28. The Supreme Court has held that "[a]lthough it is true the [word 'boy'] will not always be evidence of racial animus, it does not follow that the term, standing alone, is always benign. The speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage." *Ash v. Tyson Foods*, 546 U.S. 454, 456 (2006). In the present case, plaintiff has not demonstrated that any of the additional factors listed above were present. Specifically, plaintiff failed to demonstrate any evidence that the term was connected to plaintiff's race. More importantly, plaintiff failed to connect the alleged direct evidence of discrimination to the defendant's decision to fire the plaintiff, or to any other adverse action by the defendant. As a result, plaintiff failed to demonstrate any discriminatory motive.

Without direct proof of discrimination, the plaintiff may also prove discrimination indirectly by "establishing a prima facie case under the burden-shifting framework established in *McDonnell Douglas*." *Kalekiristos*, 958 F. Supp. at 665. Under this framework, the plaintiff must "establish[] a prima facie case of discrimination by a preponderance of the evidence." *Harris v. Wackenhut Servs.*, 648 F. Supp. 2d 53, 66 (D.D.C. 2009). Specifically, plaintiff must show that he "(1) [is a] member [] [of] a protected group; (2) [is] qualifi[ed] for the job in question; (3) [was subjected to] an adverse employment action; and (4) [the existence of] circumstances that support an inference of discrimination." *Id.* at 66-67. Once the plaintiff establishes a prima facie case, the burden shifts and "'the defendant employer [must] produce evidence' that the adverse employment action occurred 'for a legitimate, nondiscriminatory reason.'" *Id.* at 67 (quoting *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007)). However, "[o]nce 'the employer offers a non-discriminatory justification for its actions, the *McDonnell Douglas* framework falls away[.]'" *Id.* (quoting *Vickers v. Powell*, 493 F.3d 186, 195 (D.C. Cir. 2007)). The court must then "question

whether the plaintiff can show that the employer's proffered reason was merely 'pretextual,' and designed to 'shield [] [its true] discriminatory motives[.]'" *Id.* (quoting *Jackson*, 496 F.3d at 707).

The defendants have offered a legitimate, non-discriminatory reason for firing Daniel. "An employee's insubordination and his failure to perform his duties are legitimate, nondiscriminatory reasons for adverse employment actions." *Drewrey v. Clinton*, 763 F. Supp. 2d 54, 63 (D.D.C. 2011). JHU has demonstrated that Daniel was an "insubordinate and uncooperative employee." Defs.' Reply at 16. On January 31, 2013, Daniel informed a customer that he could not help her and asked her to contact his own supervisor, Elahi. Email from Roger Daniel to Socorro Diaz-Perry (Jan. 31, 2013, 04:00 PM). Daniel essentially handed his own assignment to his boss. Daniel was discharged four days later, with JHU claiming that he "was not a good fit." Letter from Shanna Hines to Roger Daniel (Feb. 4, 2013). JHU also asserts that Elahi was concerned with Daniel's job performance and that another employee had done one of Daniel's assignments for him. Hines Decl. ¶ 15. JHU further claims that during one of Daniel's meetings with Hines, he told her that he "often told Mr. Elahi he was busy so that he would not have to help the other MPCs." Hines Decl. ¶ 19. Daniel denies this allegation by stating that "[t]his meeting occurred the day after [p]laintiff complained to [d]efendant Hines regarding discrimination and harassment by [d]efendant Petasis." Pl.'s Statement of Facts ¶ 20, ECF No. 14-2.

The plaintiff may demonstrate pretext by "offering evidence of more favorable treatment of similarly situated persons who are not members of the protected class or that the employer is lying about the proffered justification." *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 144 (D.C. Cir. 2008). In order to show that another employee is similarly situated, "[p]laintiff must demonstrate that all of the relevant aspects of their employment situation are nearly identical." *Childs-Pierce v. Util. Workers Union of Am.*, 383 F. Supp. 2d 60, 70 (D.D.C.

2005) (quotation marks omitted) (quoting *Neuren v. Adduci*, 43 F.3d 1507, 1514 (D.C. Cir. 1995)). The plaintiff attempts to demonstrate that "defendant Petasis did not physically assault or demean with the use of the term 'boy' his Caucasian subordinates." Pl.'s Opp'n at 7. Plaintiff fails, however, to establish that his Caucasian co-worker Rhoddy Mcknown, or any other employees, were similarly situated employees for the purpose of this test. Specifically, Daniel fails to demonstrate how the relevant aspects of their employment were nearly identical to his.

Finally, plaintiff fails to establish the liability of individual defendants Petasis and Hines. Plaintiff admits that he is not suing defendant Petasis or defendant Hines under Title VII, since they are individuals. Pl.'s Opp'n at 5. In their motion, defendants also argue that plaintiff cannot establish Section 1981 and DCHRA claims against defendants Petasis and Hines. Defs.' Mot. Summ. J. at 20. Defendants correctly point out that Daniel's claims against Petasis under Section 1981 and the DCHRA fail since these claims failed against JHU. *See Gaujacq v. EDF, Inc.*, 601 F.3d 565 (D.C. Cir. 2010). Daniel's Section 1981 claim against defendant Hines fails as well because Hines was not an individual with supervisory authority. *See Tnaib v. Document Techs., LLC*, 450 F. Supp. 2d 87, 92 (D.D.C.) (holding that while "Section 1981 does not create a grounds for a cognizable claim against a co-worker, . . . individuals with supervisory authority . . . may be held liable under [Section] 1981"). Aside from stating that defendant Hines was the "Human Resources manager" for defendant and that she wrote in an email to defendant Petasis that she "got approval to move ahead with terminating [plaintiff]," the defendant has not proferred any evidence that Hines had supervisory authority over him. Under the DCHRA, however, it is "an unlawful discriminatory practice for *any* person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provisions of [the DCHRA] or to attempt to do so." D.C. Code § 2-1402.62 (emphasis added). Daniel's claim against Hines under the DCHRA fails, since he failed

to establish that JHU engaged in unlawful discrimination against him. *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 576 (D.C. Cir. 2010) (holding that supervisor did not aid and abet unlawful discrimination since the employer did not discriminate against plaintiff).

### B. Count IV (Assault and Battery)

In the District of Columbia, the limitations period for assault and battery is one year. D.C. Code Ann. § 12-301(4). Although Daniel states that he "did not keep a log of when the more than dozen incidents occurred," he does allege that he remembers that defendant Petasis hit him on December 11, 2012 and December 18, 2012. Pl.'s Answer to Interrog. No. 4, ECF No. 12-5. Since Daniel filed his complaint on January 22, 2014, these events occurred more than a year before the complaint was filed.

Daniel attempts to cure the deficiency in his Opposition by alleging that Petasis met with Daniel on January 24, 2013, that "[Petasis] assaulted him nearly every time they discussed something work related," and that on January 24, 2013, at the end of their last meeting to discuss job-related issues, Petasis hit him. Pl.'s Opp'n at 13. There is, however, no evidence of this occurrence in the record. The exhibits Daniel cites in support of this statement (Ex. 12 at JHU_Daniel000134, ECF No. 14-15; Ex. 20, ECF No. 14-23; and Ex. 32 at JHU_Daniel000226-27, ECF No. 14-35) fail to establish this fact. Exhibit 12 does not mention any dates of the meetings between Daniel and Petasis. Email from Roger Daniel to Linda Daley-Atila (Jan. 26, 2013, 1:36 PM), ECF No. 14-15. Exhibit 20 demonstrates that on January 23, 2012 Daniel met with Elahi. Email from Mohammad Elahi to Roger Daniel (Jan. 24, 2013 9:22 PM), ECF No. 14-23. Exhibit 32 establishes that Daniel had conversations with Petasis prior to January 24, 2013. Email from Roger Daniel to George Petasis (Jan. 24, 2013 8:35 PM), ECF No. 14-35. In addition, Daniel proffers a new affidavit with his Opposition in which he states that "[o]n January 24, 2013, after a

meeting with Defendant Petasis he struck me again." Daniel Aff. ¶ 25, Feb. 17, 2014. However, as JHU correctly pointed out, this testimony should be disregarded under the sham affidavit doctrine. Defs.' Reply at 5. The "sham affidavit rule" "precludes a party from creating an issue of material fact by contradicting prior sworn testimony unless the shifting party can offer persuasive reasons for believing the supposed correction is more accurate than the prior testimony." *Galvin v. Eli Lilly and Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (internal citation and quotation marks omitted). Prior to this affidavit, Daniel has repeatedly stated that he did not remember the dates on which Petasis hit him (aside from December 11, 2012 and December 18, 2012) and had never stated or proffered evidence that he met with Petasis on January 24, 2013, much less that Petasis hit him on that date. Daniel also failed to provide any explanation regarding the correction. Therefore, Daniel's new testimony is disregarded and his assault and battery claims are dismissed.

### C. Count V (Retaliation)

Retaliation claims are evaluated using the same burden-shifting framework as claims of discrimination. *Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006). "To establish a prima facie case of retaliation, the plaintiff must present evidence that (1) she engaged in activity protected by Title VII; (2) the employer took adverse employment action against her; and (3) the adverse action was causally related to the exercise of her rights." *Id.* The D.C. Circuit has held that "close temporal relationship may alone establish the required causal connection." *Singletary v. District of Columbia*, 35 F.3d 519, 525 (D.C. Cir. 2003) (citing *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000)). If the plaintiff meets the burden of establishing a prima facie case, "the employer must articulate a legitimate nonretaliatory reason for its action," and "finally, the plaintiff has the ultimate burden of establishing that the reason asserted by the employer is pretext for retaliation." *Holcomb*, 433 F.3d at 901.

Plaintiff alleges that defendant terminated plaintiff shortly after he both formally and informally complained about discrimination by Petasis. Pl.'s Opp'n at 10. Plaintiff alleges that he first complained on or around December 11, 2012. Email from Sharon Richardson to Thomas Rosenborg (Feb. 15, 2013, 10:45 AM), ECF No. 14-31. Further, Daniel complained verbally to defendant Hines on January 24, 2013. Email from Roger Daniel to Shanna Hines (Jan. 25, 2013, 8:32 AM), ECF No. 14-18. Finally, on January 26, 2013 Daniel made a formal complaint with JHU's Office of Institutional Equity. Email from Roger Daniel to Linda Daley-Atila (Jan. 26, 2013, 1:36 PM), ECF No. 14-15. On January 30, 2013 Linda Daley-Atila, Administrative Coordinator at the JHU Office of Institutional Equity, scheduled for Daniel to meet with a representative of the Office of Institutional Equity on February 6, 2012. Email from Linda Daley-Atila to Roger Daniel (Jan. 30, 2013, 8:55 AM), ECF No. 14-15. Plaintiff was fired on February 4, 2013, before the meeting took place. Letter from Shanna Hines to Roger Daniel (Feb. 4, 2013). Even if plaintiff is able to establish a prima facie case due to the temporal proximity of his statutorily-protected activity and the adverse employment action, plaintiff fails to demonstrate that JHU's legitimate, nondiscriminatory reason for firing him was pretextual. Temporal proximity alone fails to defeat the presumption that a proffered explanation is genuine. *See Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007) ("If temporal proximity sufficed to rebut a legitimate proffer, then protected activities would effectively grant employees a period of immunity, during which no act, however egregious, would support summary judgment for the employer in a subsequent retaliation claim.").

As has already been established in Part IIIA, JHU has demonstrated that Daniel was an "insubordinate and uncooperative employee." Defs.' Reply at 16. Moreover, as defendants pointed out in their reply, plaintiff was terminated on February 4, only four days after his attempt to give

his supervisor an assignment. Defs.' Reply at 17. In his Opposition, plaintiff fails to argue that JHU's reason was pretextual, much less offer evidence. Pl.'s Opp'n at 11. Daniel has not "disputed with any competent, admissible evidence [d]efendants' assertion that it was inappropriate for him to tell the client he could not help her and to essentially reassign the project to his supervisor." Defs.' Reply at 17. Therefore, Daniel's retaliation claim is dismissed.

### D. Count VI (Hostile Work Environment)

Hostile work environment claims under Section 1981, Title VII, and the DCHRA are analyzed using the same standards. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 n.3 (D.C. Cir. 2000) ("[T]he same framework is used for evaluating claims under 42 U.S.C. § 1981" and Title VII.); *Clemmons v. Acad. for Educ. Dev.*, No. 10-0911 (RC), 2014 WL 4851739, at *8 (D.D.C. Sept. 30, 2014) (applying the same standard to a hostile work environment claim under Title VII and the DCHRA). To establish a prima facie hostile work environment claim, Daniel must demonstrate that: "(1) he or she is a member of a protected class; (2) he or she was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment was severe to a degree which affected a term, condition, or privilege of employment, and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 189 (D.D.C. 2012). The Supreme Court has provided specific guidance as to the fourth element of the claim. "When the work place is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). "Whether an environment is hostile or abusive can be determined only by looking at all the circumstances .

. . [which] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (internal citation and quotation marks omitted).

Plaintiff's hostile work environment claim fails because he has not demonstrated how defendant Petasis's hitting or calling plaintiff "boy" was related to his protected status. Pl.'s Opp'n at 5-10. Daniel has simply alleged that Petasis referred to him as "boy," hit him on at least a dozen occasions, and that JHU "knew that [d]efendant Petasis [sic] history of putting his hands on employees but refused to take it seriously." Pl.'s Opp'n at 8. As defendants point out in their reply, "Daniel [has not] offered any evidence to raise a genuine issue that there is any causal nexus between Petasis allegedly calling Daniel 'boy' and allegedly hitting Daniel and Daniel's protected status based on race." Defs.' Reply at 14. Further, Daniel fails to establish that defendant Petasis's hitting or calling plaintiff "boy" was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment during his short 55-day tenure at JHU. *See Leavitt*, 407 F.3d at 416 (upholding summary judgment in favor of defendant on a hostile work environment claim where plaintiff's coworkers told her to "go back to where [she] came from," shouted at her and where her team leader "violently" kicked a box she stumbled over in plaintiff's office). Thus, plaintiff's hostile work environment claim cannot survive summary judgment.

### E. Count VII (Wrongful Termination)

"[A] plaintiff may not seek relief under a theory of wrongful discharge based upon a statute that carries its own remedy for violation." *Lockhart v. Coastal Int'l Sec., Inc.*, 5 F. Supp. 3d 101, 106 (D.D.C. 2013). As JHU correctly pointed out, Daniel has based his wrongful termination claim on the same statutes that he relies on in several counts of his Complaint, namely Section 1981,

Title VII, and the DCHRA. Defs.' Mot. Summ. J. at 13 (citing Complaint ¶ 77). Section 1981, Title VII, and the DCHRA have their own remedial schemes. *See* 42 U.S.C. 2000e-5; D.C. Code § 2-1403.16; *Johnson v. Ry. Express Agency*, 421 U.S. 454, 460 (1975) ("An individual who establishes a cause of action under s 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages."). Accordingly, Daniel's wrongful termination claim is dismissed.

## IV. CONCLUSION

For the aforementioned reasons, the Court finds that there are no genuine disputes as to any material fact in this case. Defendants' motion for summary judgment will be GRANTED.

A separate order consistent with this opinion shall issue this date.

**IT IS SO ORDERED.**

Signed July 30, 2015 by Royce C. Lamberth, United States District Judge.